People v Giambelluca

2026 NY Slip Op 02558

April 24, 2026

Appellate Division, Fourth Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This decision is uncorrected and subject to revision before publication in the Official Reports.

THE PEOPLE OF THE STATE OF NEW YORK, RESPONDENT,

v

WILLIAM GIAMBELLUCA, DEFENDANT-APPELLANT.

Supreme Court of the State of New York, Appellate Division, Fourth Judicial Department

Decided on April 24, 2026

243 KA 24-00065

Present: Whalen, P.J., Bannister, Smith, Nowak, And Delconte, JJ.

THE LEGAL AID BUREAU OF BUFFALO, INC., BUFFALO (SHAWN P. HENNESSY OF COUNSEL), FOR DEFENDANT-APPELLANT.

MICHAEL J. KEANE, DISTRICT ATTORNEY, BUFFALO (APRIL J. ORLOWSKI OF COUNSEL), FOR RESPONDENT.

Appeal from a judgment of the Erie County Court (Kenneth F. Case, J.), rendered November 16, 2023. The judgment convicted defendant, upon a jury verdict, of murder in the second degree and robbery in the first degree.

[*1]

It is hereby ORDERED that the judgment so appealed from is unanimously affirmed.

Memorandum: Defendant appeals from a judgment convicting him, upon a jury verdict, of murder in the second degree (Penal Law

§ 125.25 [3] [felony murder]) and robbery in the first degree

(§ 160.15 [1]). Defendant's conviction arises out of an incident in which defendant followed the victim out of a bar to the parking lot, inflicted blows to the victim's head with a wooden baluster, and stole the victim's wallet. The victim then drove from the bar to his apartment, where he was found unconscious. He was hospitalized and shortly thereafter succumbed to his injuries.

Defendant contends that the evidence with respect to his conviction of felony murder is legally insufficient because the People did not establish that his actions in robbing the victim caused the victim's death. Although defendant correctly concedes that his legal sufficiency contention is unpreserved (see generally People v Gray, 86 NY2d 10, 19 [1995]), he also challenges the weight of the evidence with respect to the causation element of felony murder, and we note that " 'we necessarily review the evidence adduced as to each of the elements of th[at] crime[ ] in the context of our review of defendant's challenge regarding the weight of the evidence' " (People v Stepney, 93 AD3d 1297, 1298 [4th Dept 2012], lv denied 19 NY3d 968 [2012]).

As relevant here, a conviction of felony murder requires evidence that defendant "commit[ted] or attempt[ed] to commit robbery . . . , and, in the course of and in furtherance of such crime or of immediate flight therefrom, he . . . cause[d] the death of" the victim (Penal Law § 125.25 [3]). To prove causation in this case, the People were required to demonstrate that defendant's conduct was "a sufficiently direct cause of death, and that there was not an obscure or merely probable connection between defendant's conduct and the death[ ]" (People v Li, 34 NY3d 357, 369 [2019] [internal quotation marks omitted]; see People v Stewart, 40 NY2d 692, 696-697 [1976]). Although defendant's conduct need not be the sole cause of the victim's death, his conduct is a "sufficiently direct cause" of it where "(1) [his] actions were an actual contributory cause of [the] death, in the sense that they forged a link in the chain of causes which actually brought about the death; and (2) . . . the fatal result was reasonably foreseeable" (Li, 34 NY3d at 369 [internal quotation marks omitted]; see People v Davis, 28 NY3d 294, 300 [2016]).

Here, the trial evidence included surveillance video showing that the victim paid with cash and that defendant then closely followed him out of the bar. During the portion of [*2]defendant's police interview that was played during the trial, defendant admitted that he hit the victim with a piece of wood. Moreover, a wooden baluster was found near the bar with the victim's blood on it, along with tissue, hair, and a mixture of DNA from which defendant's DNA could not be excluded. Additionally, there was a large spot of blood in the parking lot of the bar where the victim's phone and glasses were found, and there was blood all over the victim's car and apartment. The victim was found lying unconscious on the floor in his apartment, and he never regained consciousness at the hospital. An autopsy revealed that the victim died from blunt-impact head injuries, and the Medical Examiner who conducted the autopsy opined that those injuries were consistent with being hit by an item like the wooden baluster. Viewing the evidence in light of the elements of felony murder as charged to the jury (see People v Danielson, 9 NY3d 342, 349 [2007]), we conclude that the verdict is not against the weight of the evidence with respect to causation (see People v Swift, 160 AD3d 1341, 1342-1343 [4th Dept 2018], lv denied 31 NY3d 1122 [2018]; see generally Davis, 28 NY3d at 300-302; People v Bleakley, 69 NY2d 490, 495 [1987]). Indeed, inasmuch as the evidence supports the determination that "defendant's conduct was an actual contributory cause of the victim's death" (Davis, 28 NY3d at 301), it cannot be said that the jury "failed to give the evidence the weight it should be accorded" (Bleakley, 69 NY2d at 495).

Contrary to the further contention of defendant, we conclude that County Court did not err in refusing to suppress the statements that he made to the police while being interviewed at the police station. We reject defendant's contention that he was incapable of making voluntary statements or knowingly waiving his Miranda rights as a result of his purported impaired mental state due to drug use and lack of sleep. The record of the suppression hearing, including the video recording of the interview, establishes that defendant was read and waived his Miranda rights before the interview began, and he "was alert and made coherent decisions about the topics of discussion with the police" during the interview (People v Ashline, 124 AD3d 1258, 1259 [4th Dept 2015], lv denied 27 NY3d 1128 [2016]). We thus conclude that defendant's cognitive ability was not so impaired by drugs or lack of sleep that he was incapable of making voluntary statements (see People v Carbonaro, 134 AD3d 1543, 1548 [4th Dept 2015], lv denied 27 NY3d 994 [2016], reconsideration denied 27 NY3d 1149 [2016]). Moreover, there is no basis to disturb the court's credibility determinations, which are "entitled to great deference" (People v Butler, 170 AD3d 1496, 1497 [4th Dept 2019]; see People v Morrow, 167 AD3d 1516, 1517 [4th Dept 2018], lv denied 33 NY3d 951 [2019]).

We agree with defendant that the People were improperly permitted to use extrinsic evidence to impeach defendant's expert on a collateral issue relevant only to the expert's credibility (cf. People v Snow, 185 AD3d 1400, 1402 [4th Dept 2020], lv denied 35 NY3d 1115 [2020]; see generally People v Alvino, 71 NY2d 233, 247-248 [1987]). Here, the court erred in allowing the prosecutor to read from a court decision rejecting the expert's testimony in an unrelated criminal prosecution of a different defendant. However, given that there is overwhelming evidence of defendant's guilt and no significant probability that the error contributed to defendant's conviction, we find the error harmless (see People v Crimmins, 36 NY2d 230, 241-242 [1975]).

Defendant's contention that he was deprived of a fair trial by prosecutorial misconduct on summation is unpreserved for our review inasmuch as defendant failed to object to the statements he now challenges on appeal (see People v Moorhead, 224 AD3d 1225, 1227 [4th Dept 2024], lv denied 41 NY3d 1003 [2024]; People v Coggins, 198 AD3d 1297, 1301 [4th Dept 2021], lv denied 38 NY3d 1032 [2022]). In any event, we conclude that the contention is without merit inasmuch as the statements were either fair comment on the evidence or appropriate response to arguments made in defendant's summation (see People v Speaks, 28 NY3d 990, 992 [2016]; People v Cerroni, 225 AD3d 1117, 1120 [4th Dept 2024], lv denied 41 NY3d 1017 [2024]).

We conclude that the sentence is not unduly harsh or severe. We have considered defendant's remaining contention and conclude that it does not warrant reversal or modification of the judgment.

Entered: April 24, 2026

Ann Dillon Flynn

Clerk of the Court